IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                           Case Nos.:    5:08cr32/RS
                                                            5:10cv229/RS/EMT

JOSHUA CHUNTAY BOOKER

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 121).[1]  The Government has filed a response (doc. 123)[2] and Defendant has filed a reply (doc. 129).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.

---

[1] The court ordered Defendant to file an amended motion for two reasons: (1) his original motion (doc. 119) was not filed on the proper form for use in this court, and (2) in the original motion Defendant referred to an attached memorandum in lieu of setting forth his grounds for relief in accordance with the instructions on the form (*see* doc. 120).  Defendant was warned that once the amended motion was filed it would completely replace his previously filed motion and that the previously filed motion would be disregarded (*id.* at 1–2).

[2] The Government should have been served with a copy of Defendant's (five-page) amended motion to vacate (*see* docs. 121, 122).  Instead, however, the Government appears to have filed its response to Defendant's original motion (*see, e.g.,* doc. 123 at 9, referring to pages 5–14 of Defendant's motion), which included a memorandum of law (*see* doc. 119).  It is not clear from the record which version of Defendant's motion to vacate was actually served on the Government (*see* doc. 122, referring to both the "amended motion" and the "motion to vacate").  Therefore, because the court's order requiring Defendant to amend his original motion did not clearly specify that Defendant also needed to resubmit his memorandum of law if he wished the court to consider the arguments contained therein, the court will deviate from its normal procedure and consider the memorandum that accompanied Defendant's original § 2255 motion in conjunction with the amended motion to vacate.

72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## BACKGROUND

Defendant was charged in a superseding indictment[3] with conspiracy to distribute and possess with intent to distribute crack cocaine (count one), and possession with intent to distribute crack cocaine on July 29, 2008 (count two) (doc. 24). The conspiracy allegedly existed from February 1, 2008, through July 31, 2008 (*id.* at 1). Co-defendant Mori James Lenehan was charged in the remaining four counts of the superseding indictment with additional drug charges and two firearm charges (*id.*).

Appointed counsel Tanya J. Higgins represented Defendant (*see* doc. 31). Prior to trial, the Government filed an Enhancement Information identifying five prior state felony convictions that the 26-year-old Defendant had accumulated (doc. 41). Defendant filed a motion in limine to prevent the introduction of: (1) evidence regarding his criminal history; (2) evidence that was seized during a search of his residence on September 12, 2008, which was after the time frame of the alleged conspiracy; and (3) evidence regarding his relationship and conversations with another individual who was involved in distribution of controlled substances (doc. 54). Defendant also moved to suppress evidence relating to the same September 12, 2008 search that was the subject of the motion in limine (doc. 58). Both motions were denied (doc. 64; doc. 100 at 18).

The facts underlying the offense conduct as set forth in the Presentence Investigation Report ("PSR") were that between July 29 and July 31, 2008, a confidential informant ("CI") set up three purchases of cocaine base from Mori James Lenehan (PSR at ¶ 14). The CI first called Defendant, who in turn introduced the CI to Lenehan (*id.*). Two deals took place, and a third was set to occur on July 31, 2008 (*id.*). Law enforcement conducted a search of Lenehan's residence before the third deal was to occur and recovered 36.1 grams of cocaine base (*id.*).

Based in part on information provided by cooperating co-conspirator Lenehan, on September 12, 2008, law enforcement obtained a warrant to search Defendant's residence in Panama City,

---

[3]Defendant was not named in the original indictment (*see* doc. 12).

Case Nos.: 5:08cr32/RS; 5:10cv229/RS/EMT

Florida (*see* doc. 62-2 at 7–8). There they seized over 100 grams of cocaine, baggies, rubber gloves, and digital scales such as those commonly used to weigh narcotics (doc. 102 at 78, 86–87). Three days later Defendant made a statement to law enforcement after waiving his <u>Miranda</u> rights, both orally and in writing (*id.* at 40–41; doc. 57-3 at 3). Defendant told law enforcement that he had been in the narcotics business since the age of twelve, and had been selling powder cocaine to Mori Lenehan since March of 2008 (doc. 102 at 43). Defendant denied cooking crack cocaine, but admitted that he had allowed Lenehan to go to Defendant's mother's house to do so five or six times (*id.* at 43–44). Defendant admitted that the cocaine found at his house during the search belonged to him and that his fingerprints would be on the latex gloves recovered there, as he used them for packaging cocaine (doc. 57-3 at 3).

Defendant was tried by a jury on November 17–18, 2008 (*see* docs. 67, 72, 100, 101, 102). The jury found Defendant guilty of conspiring to distribute or possess with intent to distribute fifty grams or more of cocaine base as charged in count one of the superseding indictment and acquitted him of the possession offense charged in count two (doc. 73).

Based on the quantity of cocaine base involved in the two successful deals and the amount recovered in the July 31 search of Lenehan's residence, the PSR attributed 107.2 grams of cocaine base to Defendant, yielding a base offense level of 30 (PSR at ¶ 21). Defendant had eighteen criminal history points and therefore a criminal history category of VI (*id.* at ¶ 53). Ordinarily, this would yield a guidelines imprisonment range of 168 to 210 months (*id.* at ¶ 69). However, due to Defendant's prior felony drug convictions, he was subject to a minimum term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) (PSR at ¶ 68).

At Defendant's sentencing hearing, held December 10, 2008, the court explained to Defendant how the proceeding would be conducted (doc. 93 at 2–3). It advised Defendant that he would be required to state whether he admitted or denied each of his prior convictions, warning him that he needed to deny the prior convictions before the court pronounced sentence, if appropriate, or he would be unable to challenge the prior conviction later on appeal (*id.*). Defendant stated that he understood (*id.* at 3). Neither party brought up any unresolved objections to the PSR, and the court then asked Defendant to admit or deny each prior conviction listed in the Enhancement Information in turn (*id.* at 4–5). Defendant admitted each conviction (*id.*). When offered the

opportunity to speak, Defendant declined to do so, but through his attorney he requested that he be placed close to Panama City, Florida, to be near his family (*id.* at 5). The court sentenced Defendant to the statutory minimum mandatory sentence of life imprisonment (*id.* at 6). It waived the fine, assessed a $100 special monetary assessment, and indicated that upon Defendant's release from prison, he would be placed on supervised release for a period of ten years (*id.* at 6–7). After the court advised Defendant of his appellate rights, counsel requested that the clerk file the notice of appeal for her client to ensure it was timely filed (*id.* at 9).

On appeal, Defendant raised two issues, each relating to the September 12, 2008 search of his apartment (doc. 116 at 3). First, he argued that the district court erred in denying his motion to suppress (*id.*). Second, he asserted that the district court abused its discretion in admitting the evidence seized during this search under Fed. R. Evid. 403 and 404(b) (*id.*). The Eleventh Circuit affirmed the decisions of the district court, finding that the search warrant affidavit provided sufficient probable cause for the search warrant and that the admission of evidence seized during this search was not "unfairly prejudicial" (*id.*).

In the present amended motion, Defendant raises four grounds for relief. He contends that counsel rendered constitutionally ineffective assistance when she failed to object both contemporaneously and on appeal to the Government's "vouching" for its key witness during closing arguments. Next, he argues that counsel was constitutionally ineffective when she "abandoned" his appeal without leave of court. Third, he asserts that counsel failed to present a meaningful defense. Finally, he appears to suggest that in light of changes to the sentencing guidelines, he should not be subject to a life sentence.

## LEGAL ANALYSIS

General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C.

§ 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Id., 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (citing Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease,

240 F.3d 938, 941 (11th Cir. 2001). In applying <u>Strickland</u>, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688; *see also* <u>Dingle v. Secretary for Dept. of Corrections</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan</u>, 909 F.2d at 477 (citing <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Dingle</u>, 480 F.3d at 1099; <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. <u>Strickland</u>, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001). A significant

increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

Furthermore, to establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim],

petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

Defendant's Specific Claims for Relief

1. Counsel's failure to object to Government's "vouching" for witnesses

Defendant claims that his attorney was constitutionally ineffective when she failed to challenge, both at the time and on appeal, the Government's alleged "vouching" for its key witnesses Mori Lenehan and Sam Alston during closing arguments (doc. 121 at 3). The specific comments of which Defendant complains occurred near the beginning of the Government's rebuttal during closing arguments[4] when the prosecuting Assistant United States Attorney ("AUSA") stated with respect to Lenehan and Alston:

> And with regard to the fact that they are, they have current cases. Well, you heard them testify, they do have plea agreements. They have cooperation agreements. And those plea agreements require them to tell the truth, both about their cooperation and on the stand. If they don't do that, they will lose their plea agreement. And if they testify falsely on the stand, they could be charged with perjury. So to say that they're up here lying, they, the consequences are too great for them to lie.

(Doc. 102 at 135–36). Defendant contends that these comments "diminished the [government's] burden of proof and shifted the burden of proof" to the defense (doc. 119 at 12). He also argues that these comments suggested to the jury that the prosecutor "knew something that the jury did not,"

---

[4]Defendant's contention that defense counsel did not invite these remarks in her closing because they were made *before* counsel's summation (*see* doc. 119 at 14) is factually incorrect. The prosecutor presented her closing argument first (*see* doc. 102 at 109–126). During the defense's closing argument, counsel attacked the credibility of Alston and Lenehan, in an attempt to convince the jury that the two men were lying about her client (*id.* at 129–133). It was only after this that the Government made the argument at issue here.

and "placed the prestige of the prosecutor's office behind the witness's testimony and projected their own belief in the witness's credibility" (*id.* at 13).

Vouching occurs when the jury could reasonably believe that the prosecutor was indicating a "personal belief" in the witness's credibility. United States v. Lopez, 590 F.3d 1238, 1257 (11th Cir. 2009); *see also* United States v. Arias-Izquierdo, 449 F.3d 1168, 1177–78 (11th Cir. 2006); United States v. Cano, 289 F.3d 1354, 1365 (11th Cir. 2002) (quotations omitted); United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996); United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983). The court must consider whether: (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility; or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not presented to the jury supports the witness's testimony. United States v. De La Cruz Suarez, 601 F.3d 1202 (11th Cir. 2010); Cano 289 F.3d at 1365. A prosecutor is permitted to comment on the credibility of a witness, often a key issue in a case, so long as she does not personally vouch for a witness's credibility or bolster the witness's credibility through the reputation of the government. Lopez, 590 F.3d at 1257; United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991). She may, for instance, argue that "the fair inference from the facts presented is that a witness had no reason to lie." Hernandez, 921 F.2d at 1573 (quoting United States v. Eley, 723 F.2d 1522, 1526 (11th Cir. 1984) (quoting United States v. Bright, 630 F.2d 804, 824 (5th Cir. 1980))). The Government is also entitled to rehabilitate its witness after an attack on the witness's credibility. *See* Cano, 289 F.3d at 1366; Eley, 723 F.2d at 1526; United States v. Cotton, 631 F.2d 63, 66 (5th Cir. 1980) (because defense counsel referred to government witnesses as liars in closing arguments, government was within its right to attempt to rebut these assertions).

Context is important. *See* Cano, 289 F.3d at 1366; Cotton, 631 F.2d at 66. Therefore, it is important to take the remarks singled out by Defendant in context. Defense counsel stated in her closing arguments to the jury that:

> [Y]ou're looking at people that had every opportunity to gain from what they were saying, to gain their life back. Mr. Alston's walking free. Now Mr. Lenehan wasn't, but he wasn't that great of a witness. He didn't make eye contact with you. He had to be prompted as to what to say. He was basically trying to save his own skin, that's what he was trying to do.

(Doc. 102 at 129).  She also stated:

> Lenehan needed Mr. Booker to catch some time off of his sentence, a reduction.  He hasn't been sentenced yet.  No one wants to die in prison, and that's what this was about.

(Doc. 102 at 131).

> Finally, in discussing how the jury was to reach its decision defense counsel stated:

> Would you want to—you're supposed to base that decision on, basically, cooperating, lying, cooperating witnesses.  Someone that has a lot to gain in that they, in determining their credibility.  Did they have an interest in the outcome of this case?  They sure did.  They weren't just facing, oh, I'll just do a year in the County Jail, they were facing dying in prison.  So yeah, they had a pretty big interest.

(Doc. 102 at 133).  It was in the context of these remarks that the prosecutor began her rebuttal.  She began by stating:

> Now, just briefly on rebuttal, I just want to address a point that was raised by [defense counsel].  First of all, she talks about Mori Lenehan and Sam Alston and basically accuses them of being liars.

(Doc. 102 at 135).  The prosecutor reminded the jury that in order to present evidence about drug dealing activity, it is forced to call as witnesses individuals who are also involved in such activity (*id.*).  She then stated:

> And with regard to the fact that they are, they have current cases.  Well, you heard them testify, they do have plea agreements.  They have cooperation agreements.  And those plea agreements require them to tell the truth, both about their cooperation and on the stand.  If they don't do that, they will lose their plea agreement.  And if they testify falsely on the stand, they could be charged with perjury.  So to say that they're up here lying, they, the consequences are too great for them to lie.  And moreover, you don't have to just listen to them, look at everything else in this case that corroborates what they told you.  That will tell you, Members of the Jury, that they have told you the truth on the stand.

(Doc. 102 at 135–36).

At trial, Alston and Lenehan had each testified that pursuant to the terms of their respective plea and cooperation agreements that there would be consequences if they lied on the stand, including a potential perjury charge and the loss of the Government's support with respect to a motion for a sentence reduction (*see* doc. 101 at 30–32, 110–113).  Once defense counsel attacked their credibility, the prosecutor was entitled to argue fairly to the jury the credibility of the

Government's  witnesses.  *See* <u>Eley</u>, 723 F. 2d at 1526.  This includes reiterating what the jury had already heard, and suggesting that the "fair inference from the facts presented is that a witness had no reason to lie."  <u>Hernandez</u>, 921 F.2d at 1573 (citations omitted).  The prosecutor's comments cannot not reasonably be construed as either impermissibly making a personal assurance of the veracity of the two witnesses or suggesting that there was evidence to which the Government was privy that had not been presented to the jury.  Rather, the court finds that the prosecutor's challenged comments were a "fair response" to defense counsel's attacks on the Government's case and its witnesses.  *See* <u>Lopez</u>, 590 F.3d at 1258; <u>Hernandez</u>, 921 F.2d at 1573.

Counsel is not ineffective for failing to preserve or argue a meritless claim.  <u>Freeman v. Attorney General, Florida</u>, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); <u>Chandler v. Moore</u>, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).  Because there was no prosecutorial misconduct in this case, counsel was not constitutionally ineffective for her failure to object to the remarks singled out by Defendant, either during the closing arguments or on appeal.  Defendant, therefore, is not entitled to relief.

2.  <u>Counsel's abandonment of appeal</u>

Defendant's second claim is that counsel was constitutionally ineffective because she abandoned his appeal (doc. 121 at 3).  Defendant explains in his memorandum that after his conviction and sentence were affirmed, he wrote counsel a letter requesting that she file a petition for a rehearing, or a petition for a writ of certiorari (doc. 119 at 11, 28).  When she did not respond, Defendant contends, he assumed that this had been done (doc. 119 at 29).  Having heard nothing from counsel in some time, Defendant wrote to the Supreme Court and the Eleventh Circuit for a copy of his docket sheet to check on the status of his appeal (*id*.).  Only then did he learn that counsel had never filed the requested writ nor requested permission to withdraw from representation of him (*id*.).  Defendant now claims that counsel's abandonment of him was ineffective assistance of counsel (doc. 119 at 3).

Defendant does not have a Sixth Amendment right to counsel to pursue discretionary review in either the U.S. Supreme Court or a state supreme court.  *See* <u>Ross v. Moffitt</u>, 417 U.S. 600, 616–18 (1974); <u>Wainwright v. Torna</u>, 455 U.S. 586, 587–88 (1982) (per curiam).  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987) (emphasis added); <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985) ("[t]his right to counsel is limited to the first appeal as of right").  Where there is no right to counsel, there is no right to effective assistance of counsel.  <u>Evitts</u>, 469 U.S. at 396 n.7.  Therefore, Defendant cannot prevail on this claim.

3.  <u>Counsel's failure to present a meaningful defense</u>

Defendant next contends that counsel was constitutionally ineffective because she failed to present a specific, meaningful defense (doc. 121 at 4).  He asserts that counsel had no strategy or defense when she proceeded to trial, merely opting to discredit witnesses or try to get Defendant to accept a plea (doc. 119 at 18).  This was ineffective assistance, he argues, because counsel could have offered the fact of Defendant's daily use of cocaine and marijuana as a defense (*id*.; *see also* doc. 99 at 3).

As noted above, the evidence of Defendant's involvement with the sale of cocaine was virtually overwhelming.  Defendant had reportedly facilitated two cocaine base transactions between a CI and co-Defendant Lenehan, and before the third one occurred, law enforcement searched Lenehan's residence and recovered more cocaine base.  Law enforcement subsequently searched Defendant's residence and recovered—in addition to powder cocaine—baggies, gloves, and a digital scale, which items do not suggest that Defendant's possession was merely limited to personal use.  Moreover, three days later Defendant admitted to law enforcement that he had been in the narcotics business since the age of twelve, and had been selling powder cocaine to Mori Lenehan since March of 2008 (doc. 102 at 43).  Defendant also admitted that the cocaine found at his house belonged to him and that his fingerprints would be on the latex gloves recovered there, as he used them for packaging cocaine (doc. 57-3 at 3).

There is, however, evidence in the record documenting Defendant's drug use.  For example, it was noted by the AUSA at Defendant's detention hearing.  AUSA Littleton cited the pre-trial services report as stating that Defendant "uses marijuana daily and he uses cocaine weekly that he

oftentimes smokes with marijuana" (doc. 99 at 3). Likewise, the PSR details extensive drug use consisting of Defendant smoking three or four marijuana cigars per day and smoking cocaine-laced marijuana cigars three to four times pers week (PSR ¶ 63). Nonetheless, Defendant's assertion that he sold drugs merely to support his own personal habit is unsupported by record evidence.[5] Counsel states in her affidavit that her client never told her that he sold drugs in order to support his own habit (doc. 123-1 at 1), and Defendant does not rebut this assertion in his response. It is true that two parties who are charged with a conspiracy to distribute drugs might not be guilty of conspiracy if the evidence shows that the parties understood their transactions to do no more than support the buyer's personal drug habit. *See* United States v. Garcia, 447 F.3d 1327, 1339 (11th Cir. 2006); United States v. Dekle, 165 F.3d 826, 830 (11th Cir. 1999). However, the instant case is distinguishable from Garcia and Dekle in that Defendant, the individual with the drug habit, was not the buyer but rather the seller. Furthermore, Defendant admitted that he sold powder cocaine to another individual, knowing that the cocaine would be converted to cocaine base and even facilitating its conversion.

As part of his third ground for relief, Defendant also contends that any drugs possessed for personal use should not have been included in the drugs attributed to him for sentencing purposes. He suggests that if counsel had presented this line of defense, it would have mitigated his culpability and reduced his offense level. The factual premise for this argument is mistaken. Even accepting for sake of argument that the cocaine seized from Defendant's residence on September 18, 2008 was all for "personal use," despite the presence of packaging material and Defendant's admission that he packaged the substance for sale, this quantity of powder cocaine was not factored into Defendant's offense level calculation (*see* PSR ¶¶ 14, 16, 21). Instead, only the cocaine base that was created from the cocaine that Defendant sold to co-defendant Lenehan formed part of the

---

[5]Defendant's suggestion, that the district court's finding that he was indigent and unable to afford to pay a fine was proof that he did not make his living as a drug dealer, is unconvincing. Furthermore, the extent to which Defendant may or may not have supported himself through the sale of controlled substances is irrelevant to the question of his guilt with respect to the conspiracy charged in this case.

calculations (*id.*).  Therefore, the arguments raised in Defendant's third claim do not entitle him to relief.

  4.  Post-sentencing changes in the law

Defendant's last ground for relief is that he should be resentenced based on the Fair Sentencing Act of 2010, Pub. L. No. 111-220 § 2(a), 124 Stat. 2372 (2010), which amended title 21 U.S.C. § 841(b) to lower the statutory mandatory minimum penalties for certain crack cocaine offenses.

The Government argues that this claim is procedurally barred due to Defendant's failure to raise it on appeal.  A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes: (1) cause for not raising the ground on direct appeal; and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Defendant does not present a meritorious claim of ineffective assistance of counsel under the circumstances in this case.  It is well established that trial counsel's failure to predict a change in the law does not constitute deficient performance.  *See* Marquard v. Secretary, Dept. of Corrections, 429 F.3d 1278 (11th Cir. 2005) (citing Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994)).  In fact, there is a "wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."  United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (citing Spaziano, 36 F.3d at 1039; Davis v. Singletary,

119 F.3d 1471, 1476 (11th Cir. 1997); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995); <u>Pitts v. Cook</u>, 923 F.2d 1568, 1572–74 (11th Cir. 1991); <u>Thompson v. Wainwright</u>, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986)).  This is true even when the change is such that the forfeited issues was, in hindsight, a sure winner.  <u>Ardley</u>, 273 F.3d at 993 (citing <u>Wright v. Hopper</u>, 169 F.3d 695, 707–08 (11th Cir. 1999) (<u>Batson</u> issue); <u>Elledge v. Dugger</u>, 823 F.2d 1439, 1443 (11th Cir. 1987) (<u>Michigan v. Mosley</u> issue); <u>Thompson v. Wainwright</u>, 787 F.2d at 1459 n.8 (<u>Ake</u> issue)).

Even if Defendant had shown cause for his failure to raise an earlier challenge to his sentence under the applicable statute, he is not entitled to relief.  The Eleventh Circuit has expressly held that the Fair Sentencing Act of 2010 does not apply retroactively to defendants such as Defendant in this case, who were sentenced before August 3, 2010.  <u>United States v. Daniel</u>, No. 12-13128, 2013 WL 135093, at *4 (11th Cir. Jan. 10, 2013) (citing <u>United States v. Berry</u>, 701 F.3d 374, 377–78 (11th Cir. 2012)); *see also* <u>United States v. McKeithan</u>, 437 F. App'x 148, 150–51 (3rd Cir. 2011) (collecting cases).  Thus, no relief is warranted.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The amended motion to vacate, set aside, or correct sentence (doc. 121) be **DENIED**.

2.       A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 4<u>th</u> day of April 2013.

/s/ <i>Elizabeth M. Timothy</i>_____
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**